GEO. Q. WHITNEY *v.* HANOVER NATIONAL BANK ET AL.
(TWO CASES),

AND

SAME *v.* BANK OF GREENVILLE ET AL.

1. CHANCERY PRACTICE. *Parties. Application to be made defendant.*

　One cannot, on his own application, over the objection of complainant, be made a defendant to a suit in chancery.

2. RECEIVER. *Insolvent corporation. Ex parte application. Appointment void.*

　The appointment of a receiver for a bank, on its *ex parte* application, though the corporation is insolvent, is void, and the decree therefor, as well as all steps by the receiver thereunder, are subject to assailment collaterally, and may be disregarded; and this, although, on the receiver's application, a decree has been rendered in the case, enjoining all persons from suing the bank.

3. SAME. *Jurisdiction to appoint. Absence of lien. Const.* 1890, §§ 147, 160.

　But where, under such void appointment, the chancery court has taken control of the bank's assets, and creditors, although without liens, file an independent creditors' bill for the preservation of the assets, a decree

71 Miss.—64

in such suit appointing a new receiver, even if erroneous, is not subject to collateral attack as being void for want of jurisdiction. Especially is this true under constitution 1890, which, by § 160, dispenses with the necessity for exhausting legal remedies before invoking the jurisdiction of equity, and, by § 147, forbids reversal of judgments in civil causes merely for a mistake of jurisdiction as between equity and common law.

4. SUPREME COURT.    *Power to reverse.    Jurisdiction.    Const.* 1890, § 147.

Section 147, constitution 1890, is not applicable to a decree appointing a receiver, void because made on *ex parte* application of a debtor, such unauthorized proceeding not being a "cause" within the meaning of said section.

5. SAME.    *Mistake of jurisdiction.    Judgment.    Collateral attack.*

Section 147, constitution 1890, by forbidding reversal of judgments and decrees in civil causes for mistake of jurisdiction as between equity and common law, necessarily exempts them from collateral attack on such ground.

FROM the chancery court of Washington county.

HON. W. R. TRIGG, Chancellor.

The facts appear from the opinion.

*S. H. King,* for appellant,

Filed a very elaborate and voluminous brief and argument, and, as to the questions passed on by the court, cited the following authorities:

The appointment of a receiver in the absence of a pending suit is void. *Hardy* v. *McClellan,* 53 Miss., 507; 52 Ala., 220; 53 Cal., 553; Wait on Insolvent Corp., §§ 254–258; 20 Am. & Eng. Enc. L., 24.

The bank could not, on its voluntary petition, have a receiver appointed. Wait on Insolvent Corp., §§ 149, 170, 183; 32 Mich., 10.

A corporation cannot be dissolved, and charter privileges taken away, by collateral proceedings, but by *scire facias* or information in the nature of *quo warranto* in a court of law. *Bayles* v. *Orne,* Freeman Ch., 161; 1 Hopkins, 354; 3 Paige, 225; 1 Edw. Ch., 84; 3 Iowa, 148; *Ib.,* 77; 99 Mass., 267; 124 N. Y., 337; Pom. Eq. Jur., §§ 112, 138, 171; Morawetz

on Priv. Corp., § 1040 ; High on Receivers, §§ 287–307; Kerr on Bus. Corp., 383 ; 20 Am. & Eng. Enc. L., 57; High on Inj., § 1189 ; 130 Mass., 194.

The proceedings in which a receiver was appointed being void, the assets are subject to the lien of the judgment. High on Receivers, § 431 ; 59 N. Y., 548.

*Nugent & Mc Willie,* on the same side.

A banking corporation cannot, any more than any other debtor, have a receiver of its own property appointed. *Hardy* v. *McClellan,* 53 Miss., 507 ; 20 Am. & Eng. Corp. Cas., 554 ; 32 Ill., 95 ; Chase, 466 ; 33 Mich., 303 ; 52 Ala., 220 ; 1 Ark., 578 ; 15 Vesey, 445.

Under neither bill could a receiver be appointed. A court of equity has not power, by virtue of its general jurisdiction, to dissolve a corporation, or wind up its affairs and sequester its property. 43 Barb., 504 ; 52 *Ib.,* 537 ; 16 Cal., 145 ; 32 Ill., 95.

In the absence of a statute, a general contract creditor cannot, before judgment, have a receiver of the property of his debtor, whether a corporation or individual. *Brown* v. *Bank,* 31 Miss., 454 ; 10 Md., 500 ; 16 *Ib.,* 74 ; 28 Barb., 451 ; 43 Ind., 532 ; 2 Johns. Ch., 144 ; 18 N. J., 26 ; 9 *Ib.,* 465 ; 18 Ill., 305 ; 6 Rand., 188 ; Edwards on Receivers, 13.

There was no *bona fide* defendant to the second suit. It is subject to all the objections applicable to the first.

Whitney had the right to become a party to the bill at his own instance, since it appeared from the case made that the ends of justice demanded it. 16 Ga., 137 ; 2 J. J. Marshall, 377 ; 5 Wall., 205 ; 1 Blatch , 232.

*Yerger & Percy,* for appellee.

It requires no citation of authority to establish that the appointment of Pollock receiver can be assailed in this proceeding only if it be a nullity. An adjudication that a particular case is of equitable cognizance cannot be disturbed

by original suit. 131 U. S., 352; 45 Ohio St., 133; *Ex parte Wimberley*, 57 Miss., 437. It cannot be questioned that the chancery court may, on the petition of creditors, under certain circumstances, take charge of and wind up an insolvent corporation. There is no reason why this may not be done on the request of the corporation itself. The appointment was for the benefit of the creditors. See Morawetz on Corp., § 863. If particular creditors should threaten to obtain an advantage over other creditors by attachment or otherwise, it is the duty of managing agents of a corporation to apply to the court to secure a general distribution for the benefit of all the creditors. Gluck & Becker on Receivers of Corp., 45. See 64 How. Pr., 320; Wait on Insol. Corp., § 181. For illustration of cases where receivers were appointed at the instance of corporations themselves, see *Railroad Co.* v. *Humphreys*, 12 S. C. Rep., 787; 22 Fed. Rep., 272.

The chancery court certainly had jurisdiction to appoint Thomas receiver. It was done in a suit regularly brought by creditors. The allegations of the bill were sufficient to authorize the appointment. We contend (1) that equity had inherent power, independently of statutory enactment, to appoint a receiver; (2) that the assets were a trust-fund for the benefit of creditors; (3) that, under the facts averred, the receiver was properly appointed. In support of the jurisdiction, see Beach on Eq. Jur., 997; Gluck & Becker on Receivers of Corp., 31; High on Receivers, § 40; 20 Am. & Eng. Enc. L., 56; 16 Wall., 203; Waterman on Corp., § 355; Story on Eq. Jur., § 1252; Pomeroy on Eq. Jur., § 1046; 8 Peters, 284; 91 U. S., 56; 15 How., 312; Taylor on Corp., § 654; Perry on Trusts, § 242; 57 N. Y., 587; Morawetz on Priv. Corp., § 803. The propriety of the appointment of a receiver in any case must largely depend on its peculiar features. See *Mays* v. *Rose*, 1 Freeman Ch., 703. The court having decided that the circumstances warranted the appointment, and that it had the jurisdiction on the bill filed to appoint, its decree is valid, at least on collateral attack. For

cases warranting the appointment of a receiver for a corporation, see Foster on Fed. Pr. (2d ed.), 397; Wait on Insol. Corp., § 173; 1 Hopkins' Ch. Rep., 429; 1 Paige (Ch.), 587; 134 U. S., 530.

The argument that the court cannot, by its decree, dissolve a corporation and deprive it of its franchises falls to the ground, because the bank had been abandoned by its officers, and had appealed to the court to administer its assets. There is no halo of sanctity about a defunct corporation. On this point, see 4 Fed. Rep., 849; 43 Fed. Rep., 204.

The appointment was binding on the corporation, and no one else can question it. Beach on Eq. Jur., 934.

Argued orally by *S. H. King*, for appellant, and *Leroy Percy*, for appellees.

CAMPBELL, C. J., delivered the opinion of the court.

These three cases were argued and submitted together, and will be so considered. Their history is this: The Bank of Greenville was found to be insolvent, and came to a stop on the twenty-second day of December, 1891, when the directors, headed by the president, applied, by petition, to the chancellor to take charge of the assets of the bank by appointing a receiver to collect and manage its affairs. The chancellor appointed the president of the bank receiver, and, on his application, enjoined all persons from proceeding by suit against it. The receiver appointed entered upon his duties as designated, and continued until he resigned, on the sixth of July, 1892. On the eleventh of July, 1892, the Hanover National Bank and other creditors of the Bank of Greenville exhibited their bill in the chancery court in which the receiver had been appointed against the Bank of Greenville, and averred the foregoing facts, and that, since the twenty-second of December, 1891, the officers and directors of the bank had ceased to manage it, and that its affairs had been managed wholly by Pollock, as receiver, who had collected

a large sum of money due said bank, and that the appoint-
ment of another receiver was necessary for the preservation
of the assets of the bank and the protection of the rights of
its creditors, with other specific allegations designed to show
the necessity for the immediate appointment of a receiver.
Upon due notice to the defendant, a receiver was appointed
in this proceeding on the eighteenth of July, 1892, and the
former receiver was directed to deliver to him all the assets
of the bank in his hands.

On July 23, 1892, George Q. Whitney and other creditors
of the Bank of Greenville united in a bill against the bank
and G. D. Thomas, who had qualified and was acting as re-
ceiver by virtue of his appointment on July 18, and against
other defendants in said chancery court. This bill set forth
the suspension of the bank on December 22, 1891, and the
appointment by the chancellor of Pollock as receiver on the
application of the president and directors of the bank, and
that Pollock took exclusive control of all the assets of the
bank, and acted as receiver, but that defendant, Thomas, at
the time of exhibiting said bill, claimed to be receiver of
said bank by virtue of an appointment by the chancellor of
said court; that the application to the chancellor on Decem-
ber 22, 1891, and all the proceedings had, including the pro-
curement of the appointment of Thomas as receiver, were
devices to hinder, delay and defraud creditors, and "invalid
and void." Discovery was sought by the bill as to all the
assets of the bank of whatever kind, and a lien upon them
prayed to be established from the date of filing the bill, and
their appropriation to the demands of the complainants.
The Bank of Greenville interposed a plea to this bill of the
proceeding by the *Hanover National Bank et al.* v. *The Bank
of Greenville,* and the appointment, in that case, of Thomas
as receiver, and that he had qualified as such, and was in
possession of the assets of the bank under that appointment,
and relied on this plea as a bar to the bill filed July 23, 1892.
The plea was set down for hearing upon its sufficiency, and

was sustained and the bill dismissed. From that decree an appeal was taken, and case No. 7460 on the docket of this court is that appeal.

On October 4, 1892, George Q. Whitney petitioned the chancery court of Washington county, in which these cases were pending, and which had been consolidated, setting forth that he was a creditor to a large amount of the Bank of Greenville, and had recovered judgment for a large sum against it in the court of the United States, at Vicksburg, Miss., July 28, 1892, which had been duly enrolled, and, he claimed, was a paramount lien on all the assets of said bank, notwithstanding all the various proceedings in the said chancery court, which are set forth with detailed particularity, and denounced as void, and no obstacle in law to the application of the assets of the bank to the claim of the petitioner, who prayed to be allowed to be made a party defendant to said cause. At the same time he presented a petition and bond for removal of said cause, in which he prayed to be made a defendant, to the United States court at Vicksburg.

The complainants in the cause in which Whitney sought to intervene as a defendant opposed his application, and it was denied by the court, and from this he appealed, and that appeal is contained in No. 7459 on the docket of this court. Defeated in his effort to be made a defendant, as stated, Whitney made an abortive effort to have the United States court at Vicksburg to take charge of his suit, and enforce his claim to be paid out of the assets of the Bank of Greenville, in preference to other creditors, but with that we have no concern, and state the fact historically only, being in the record before us.

On February 6, 1893, Whitney, who had been baffled in all his efforts to obtain payment as a creditor entitled to precedence out of the assets of the Bank of Greenville, exhibited an original bill in the chancery court of Washington county against the complainants in the bill of the Hanover

National Bank and others against the Bank of Greenville, exhibited July 11, 1892, and the Bank of Greenville and W. A. Pollock, receiver, and G. D. Thomas, receiver. In this bill is narrated, with detail, the history of the dealing by and with the bank from the time of its suspension and taking refuge from creditors in the chancery court to the filing of this bill, which also relates the persistent, but ineffectual, efforts of the complainant in state and federal courts to secure recognition of his right, as claimed, to be first paid out of the assets of the Bank of Greenville. It assails the action of the chancery court of Washington county as void for want of jurisdiction over the subject-matter dealt with, and seeks to vacate all orders that stand in his way, and the payment of his as a preferred claim out of the effects of the bank. The bill seeks injunction, which was obtained.

This bill was answered, and most of its allegations admitted, but the claim made by it of the right of the complainant to priority of payment out of the assets of the bank was denied. A motion was made to dissolve the injunction, and some affidavits were taken and some facts were agreed on for the hearing of the motion to dissolve, and it was agreed that the case should be heard on the motion to dissolve and for final decree on such hearing. The respondents gave notice of a claim for damages to be allowed on dissolution of the injunction to amount of $2,500 for attorneys' fees in defense of the suit.

The case was heard in accordance with the agreement, and a decree was made dissolving the injunction, dismissing the bill and awarding damages against the complainant in the sum of $2,000 as attorneys' fees, the decree reciting that the court had heard testimony in open court as to the attorney's fee, and taxed the costs against the complainant, who appealed, and this is No. 7749 on the docket of this court.

From this complete but succinct history of this litigation, as disclosed in voluminous form in the three cases before us, it is apparent that the only question presented for decision

by the appeal No. 7459 is as to the propriety of the action of the court in refusing to permit Whitney to intervene *as a defendant* in the case of *Hanover National Bank et al.* v. *The Bank of Greenville*, against the objection of the complainants, who protested earnestly against it. The court did right in this refusal. "No such practice is known in equity as making a person a defendant to a suit, upon his own application, over the objection of the complainant." 1 Daniel's Ch. Pl. & Pr., § 287, note 2, and cases cited. See *Stretch* v. *Stretch,* 2 Tenn. Ch. Rep., 140, where the subject is fully treated, and the action of the court in the case before us is fully vindicated on principle and authority.

The question presented by cases Nos. 7460 and 7749 is, whether the chancery court of Washington county was so wanting in jurisdiction of the case of Hanover National Bank and others exhibited against the Bank of Greenville, July 11, 1892, as to render its action in the case void and liable to be assailed collaterally and treated as a nullity, whenever and however called in question. For, if it be conceded that the action of the court was erroneous, unless it was void, the fact that it had assumed jurisdiction and taken control of the assets of the Bank of Greenville, and appointed a receiver in the case, was an answer to the original bill exhibited by Whitney and others on July 23, 1892, and likewise to Whitney's bill of February 6, 1893.

We regard the action of the chancellor on December 22, 1891, appointing a receiver on the *ex parte* application of the directors of the bank, and his subsequent action in pursuance of that appointment, as utterly void and of no legal effect. It could be assailed collaterally, and disregarded with impunity by anybody. The proposition that an insolvent debtor can take refuge in a chancellor's decree, on his or its own application, and obtain protection against pursuing creditors, who may be enjoined from pursuing their ordinary remedies, is without foundation. We cannot account for the mistake fallen into in the proceedings of December 22, 1891, and all

that was done under it, except by supposing that what is provided for by statute in other states was considered admissible in the absence of statute in this state. The suit of *Hanover Bank et al.* v. *The Bank of Greenville*, instituted July 11, 1892, is evidence of the fact that it was considered necessary to strengthen the grasp of the chancery court on the assets of the bank; and that was a timely proceeding for the purposes of the complainants in that suit, for it results from what we have said, that all that went before was of no legal validity; and, but for that suit, there would have been no barrier to his proper proceeding by any creditor, the injunction issued to the contrary notwithstanding. But, if the court was not wholly without jurisdiction in that suit, it was inadmissible to inject into it other suits, as sought to be done by the bill of July 23, 1892, and that of February 6, 1893. The question, then, is as to the case of *Hanover Bank et al.* v. *The Bank of Greenville*, begun by original bill July 11, 1892. Was the action of the court as to that case void? It is to be observed that the bill in that case is not one to secure any priority or advantage to the complainants in it, to the injury of other creditors, but it is for all creditors of the Bank of Greenville, as shown by its prayer for the appointment of a receiver, to preserve and collect the assets, and distribute the money among all the creditors, according to their rights, as ascertained. There was no time when Whitney could not join in this suit as a complainant, or assert his right of priority as claimed, if he had chosen to do so, but his persistent effort was to attain priority over other creditors, and secure full payment, if the assets were sufficient, and he was unwilling to make common cause with all creditors, but, asserting the voidness of all the proceedings in the chancery court as to these matters, he sought, as he had a right to do, to obtain precedence as a creditor, by getting judgment against the bank, and enforcing it. He got judgment, and, if that entitled him to be paid out of the bank's assets in the hands of the receiver, he might have propounded his claim of priority

in the chancery court, and demanded its recognition and payment by an order therefor, but he maintained his attitude of asserting the nullity of all the proceedings, in this matter of the chancery court, and attacked them as void, and the maintenance of his bill of February 6, 1893, depends on maintaining the legal proposition on which it rests. His learned counsel has been not only persistent but consistent in the many methods employed to obtain for his client an advantage over other creditors. It remains to be stated whether or not he shall succeed in securing the reward of his industry in behalf of his client. By his bill of February 6, 1893, he has pursued the proper course to obtain an adjudication of the question on which the claim made by his client depends.

This bill attacks the validity of the proceedings in the chancery court in the case of *Hanover Bank et al.* v. *Bank of Greenville*, on the ground that it is not the province of a court of chancery to dissolve a corporation, or interfere with the exercise of its franchise, or displace its officers, or appoint a receiver, or otherwise exercise jurisdiction over it at the instance of creditors who have no judgment against it.

In this case there was no interference by the court with the bank or its franchise and the performance of the ordinary functions of its officers; there was no attempt to dissolve or restrain the corporation. Its directors had voluntarily surrendered its assets to the keeping of the chancellor, and ceased to perform their duties as to them. The chancellor had accepted the trust, and designated a receiver to take charge of these assets and care for them, and had enjoined all creditors of the bank from suing it, and had proceeded in the administration of the trust he had accepted as if there had been a creditor's bill; and, although this fell little short of being a mere farce, saved from it only by the seriousness of the performance, with judicial gravity, in good faith, it was, nevertheless, the condition in which the complaining creditors found the affairs of their debtor on

July 11, 1892, when they instituted their suit, representing
the deplorable conditions existing, and prayed the interfer-
ence of the chancery court to take charge of the assets of
their debtor, the bank, thus abandoned by it and surrendered
to the chancellor, who, though without authority to receive
them, had yet taken control of them, as if he did have
the right to receive them, and had been dealing with them
accordingly. The bill urged the necessity for the imme-
diate appointment of a receiver for the preservation of the
assets of the bank, which had suspended and ceased to
care for them since December 22, 1891. It is true that none
of the complainants were judgment creditors of the bank,
and none had a specific lien on the assets of the bank. Yet,
these assets constituted a trust-fund, in a general sense, for
the payment of the creditors of the bank, and, having been
*abandoned* by the managers of that corporation, and trans-
ferred to the chancellor, who was dealing with them as of
right, when he had no more legal authority over them than
a private individual, who might have found them, if it may
be said that, under these circumstances, it was erroneous for
the chancellor to entertain the suit of general creditors of
the bank and appoint a receiver, it certainly cannot be main-
tained that this proceeding was wholly unauthorized and
void, so as to be subject to collateral attack for want of juris-
diction to entertain the suit. Vanfleet's Collateral Attack,
§ 100; *Brown* v. *Lake Superior Iron Co.*, 134 U. S., 530; *Mel-
len* v. *Moline Iron Works*, 131 *Ib.*, 352; *Graham* v. *Railroad
Co.*, 102 *Ib.*, 148; *Goodman* v. *Winter*, 64 Ala., 410; *Barbour*
v. *National Bank*, 45 Ohio St., 133; *Rouse* v. *Merchants' Bank*,
46 *Ib.*, 493.

Many other books might be referred to in support of the
proposition asserted, but, if the doctrine announced did not
prevail elsewhere, there can be no doubt as to the law here
since the constitution of 1890. By § 160 of that instrument,
"in all cases where said court [chancery] heretofore exer-
cised jurisdiction auxiliary to courts of common law, it

may exercise such jurisdiction to grant the relief sought, although the legal remedy may not have been exhausted or the legal title established by a suit at law." This is in harmony with the scheme of the constitution reversing the former relations of the courts, in which the circuit court possessed general jurisdiction, and was the repository of the power to administer legal remedies, and the chancery court had jurisdiction of certain designated matters and where there was not a full, adequate and complete remedy at law. Now the circuit court has original jurisdiction "in all matters, civil and criminal, in this state *not vested by this constitution in some other court.*" § 156. A residuary grant is thus made to the circuit court. This manifests the policy of enlarging the domain of chancery, and limiting that of the court of law. What may be the effect of the provisions mentioned in widening the scope of the court of chancery cannot be determined now, and is not necessary to be decided, but that they will be influential in considering the class of cases in which chancery courts may entertain jurisdiction is undeniable.

When we look to § 147 of the constitution all doubt as to the proper resolution of the question presented by this case vanishes.. Because of that section, error is not predicable of " any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction." " No judgment or decree in any chancery or circuit court, rendered in a civil cause, shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree from any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction," is the mandate of the fundamental law, and sweeps away all distinction between equity and common law jurisdiction, after it has been entertained, in a civil cause in the chancery or circuit court. It may be an action of *crim. con.*, or for libel or slander or trespass, or any other *civil cause* in the chancery court, or an equity matter in a court of law, if en-

tertained there, error is not predicable, and the decree or judgment shall not be annulled for want of jurisdiction. The chancellor or circuit judge conclusively and finally settles the question of jurisdiction, as between equity or common law jurisdiction, of the particular case; for it would be the height of absurdity to hold that, while error may not be affirmed of it, such judgment or decree is void.

The reason we do not apply the provisions of the constitution mentioned to the matter of December 22, 1891, and uphold it and what followed, is that it was not a *cause.* There was no suit or action, and no parties plaintiff and defendant, but a mere *ex parte* surrender by the bank to the chancellor of its affairs, for which there is no authority in law, and therefore the constitution does not apply, but relates to a civil cause as properly understood, and not to all that a chancellor or judge may do.

The case of *Hanover National Bank et al.* v. *Bank of Greenville* is a suit regularly begun by bill against a defendant, and regularly proceeded with to a final decree; and, while we will not be understood to hold that there was even error in the action of the chancellor, which question is not now before us for decision, we are sure his action cannot be held void or annulled, and that disposes of cases Nos. 7749 and 7460.

The decree allowing two thousand dollars for damages, in the way of attorneys' fees, is complained of, but, as the evidence on which the chancellor decided this sum to be reasonable was not put in the record, and is not before us, we cannot disturb the decree for this.

The result is that the decree in each of the three cases hereinbefore mentioned must be

*Affirmed.*