# Taber *et al. v.* Royal Insurance Co. *et al.*

| 124 | 6▲1 |
| 125 | 580 |

*Creditors' Bill to Marshal Assets of a Corporation.*

1. *Insolvent private corporation; assets of how distributed.*—When a private corporation becomes insolvent, ceases to do business, and fails or refuses to pay its debts, a court of equity is the only forum capable of reaching its assets, and of distributing them equally to its creditors.

2. *Same.*—The duty of discharging the obligations of an insolvent private corporation, through the administration of its assets, and the necessity of doing this upon principles of equality and fairness, according to the jurisprudence of courts of equity, authorize and require the marshalling of both debts and assets. The debts must be determined to discover to whom *pro rata* payment is to be made, as the assets must be realized and reduced to money to provide the means of payment.

3. *Same.*—The marshaling of debts and assets of an insolvent corporation requires the court to fix a day to which all the engagements of the company may be referred, so as to determine the status of the debts, as to amounts, including principle and interest, otherwise there could be no equality of distribution. It is for like convenience of administration, usual for the court to fix a time within which claims must be presented and

[Taber *et al* v. Royal Insurance Co. *et al.*]

proved; but while the administration will not be delayed, it is the constant habit to allow claims to come in as long as the court has the funus under control.

4. *Same.*—There is no inherent right in the court of chancery in any case of administration, unaffected by statutes, to terminate contract relations. These, when made, whether by corporations or natural persons, run their course, and the rights of parties are solvable only by the terms of the contracts themselves. But there is in all contracts of insurance an implied if there is no express engagement on the part of the company insuring, to keep its affairs in condition to meet its future risks for which premiums have been paid or promised. And so, when it falls out that the company is unable longer to keep its promises, and its assets are taken possession of by the court for *pro rata* application to its debts, the court has the right to fix a day up to which engagements under contract may be regarded as continuing, but after which the creditors may regard them as terminated on account of the altered condition of the company, disabling it further to meet its reciprocal promises. This is an option afforded to creditors by the court in view of the contract relation of the parties, and is strictly in the nature of a rescission by them, and the proof by them in such cases is in the way of damages and is measurable by the present value of their contracts.

5. *Same*—The finding of the insolvency of a private corporation, and the assumption of possession of the assets by the court for application to debts, is an adjudication against the right of the corporation of insisting and standing on the terms of its contracts and asserting its ability and willingness to perform, and leaves open to its creditors the unqualified right of proving the present value of their contracts as of the day fixed by the court for the convenience of administration. But while the court might harshly conclude its distribution to creditors, coming strictly within its orders, on the day so fixed without reference to the rights of other creditors not precisely within their pale, the practice is otherwise.

6. *Same.*—There can be but one administration of a trust found; and the rendition of an administration decree adjourns all suits or claims into that suit, and in the forum making the decree. The court will not thereafter permit a creditor to proceed on his own account against the assets of which it has assumed control, since such a right would make it impossible for the court to proceed effectively. But the court makes its administration decree a judgment in favor of all the creditors who come in under its provisions and claim its benefits.

7. *Creditors' bill and decree stop statute of limitations.*—The filing of a creditors' bill and a decree thereon stop the running of the statute of limitations against creditors who come in under its provisions.

8. *Corporations cannot terminate contracts by fraudulent suit.* Where officers of an incorporated insurance company filed a bill alleging the insolvency of the company and praying for the distribution of the assets by the court, the appointment of a receiver in such suit did not terminate contracts made by the company. Insurance companies cannot thus terminate their contracts, and the courts can only do it by offering an election to the creditors to come in under the decree and take the present value of their contracts, or remain out and get what they can beyond the assets under the control of the court.

9. *Immediate notice; what is.*—Where an insured gave notice of loss two days at most after the loss, it may well be said that this was "*immediate*" in the sense and purpose of a contract which provides for "immediate notice."

10. *Forfeitures must be provided for in policy of insurance.*—Provisions in a policy of fire insurance that the insured shall within a certain time after the notice of the fire, render to the company a particular account of loss, to be effective as forfeitures must be expressed as such in unmistakable terms in the contract itself.

11. *Notice and proof of loss when waived by insurance company.* Where the notice of loss and the proof of loss were never objected to by a fire insurance company, except by way of defense to the claim in a suit in equity to marshal the assets of the company, this was a clear waiver.

12. *Stipulation in policy for suit to be brought when waived.*—Where the officers of a fire insurance company abscond, so that personal service cannot be had, it cannot resist a claim on the ground that suit thereon was not commenced within one year according to the conventional limitation of the policy. Such a stipulation may be waived or rendered nugatory by conduct or circumstances. The company cannot suffer its officers to go and remain in other states, beyond the jurisdiction of the courts of its domicile, and cancel its debts by limitations while they are absent from the State.

13. *Certificate when waived.*—If there was no certificate of a magistrate as required to the proof of loss accruing under a policy of insurance, but there was no objection on that account it was waived.

APPEAL from Jefferson Chancery Court.

Heard before Hon. THOMAS COBBS.

The Royal Insurance Company was an incorporated fire insurance company, with its principal place of business at Birmingham, Alabama. It became insolvent. Its president and secretary, as stockholders, filed a bill praying that a receiver be appointed, and its assets distributed by the court. The receiver was appointed, but nothing more was done in the suit; and immediately after filing their bill the complainants left the State. Afterwards this suit was brought by several creditors of the company in behalf of themselves and all other creditors. A decree was rendered declaring the insolvency of the company, and that complainants were entitled to relief. It was referred to the register to ascertain who were creditors and the amount of their claims. A day was fixed for this purpose, at which the creditors were required to present and prove their claims. A number of claims were rejected by the register at the hearing before him. His report to the court was sustained except as to a few claims which were rejected by the court. The appellants, H. M. Taber and others appealed from the decree rejecting their claims.

MOUNTJOY & TOMLINSON, and BUSH & BROWN, for appellants.—1. Filing suit by one creditor on behalf of all stops the running of the statute of limitations as to all. *Richmond v. Irons*, 121 U. S. 22.

2. Corporation liable for losses or other debts accruing after dissolution.—*People v. National Trust Co.*, 82 N. Y. 283; *People v. Security Life & Ins Co.*, 78 N. Y. 114; White on Insolvent Corporations, § 382.

3. Immediate notice means reasonable notice under all the circumstances.—*Niagara Fire Ins. Co. v. Scammon*, 100 Ill. 644; *Knickerbocker Ins. Co. v. McGinnis*, 87 Ill. 70.

4. Failure to file proof of loss within the time required by the policy, no cause of forfeiture unless so made by the terms of the contract.—*Steele v. German Ins. Co.*, 90 Mich. 403; *Tubbs v. Wellin Ins. Co.*, 84 Mich. 646; *Sun Mutual v. Mattingly*, 77 Tex. 162; *Kenton Ins. Co. v. Downs*, 12 Ky. L. Rep. 115.

[Taber *et al* v. Royal Insurance Co. *et al.*]

5. Where certificate of magistrate is wanting to proof of loss, the defect is waived unless objection is made.—*Fireman's Ins. Co. v. Crandall,* 33 Ala. 9; 115 Penn. St. 407; 142 Mass. 142.

6. Keeping proof of loss without objection, or refusal to pay on other grounds, waiver.—*Com. Fire Ins. Co. v. Allen,* 80 Ala. 571.

7. Court of equity has no power to dissolve a corporation without some statute confers it.—Thompson on Corp., vol. 4, § 4538; Wait on Corp., sec 172; *Atty. Gen. v. Earl,* 17 Neb. 491; *State v. Ross,* 25 S. W. 947 (Mo.); *Folger v. Ins. Co.,* 99 Mass. 267; *Osgood v. McGuire,* 61 N. Y. 524.

8. There is no such thing as an *ex parte* rescission of a contract. Renunciation by one party before time of performance discharges the other party, *if he* 'chooses, but not otherwise.—Anson on Const., 269; Clark on Contr., § 270.

H. C. SELLHEIMER and WALKER, PORTER & WALKER, *contra.*—The rights of a policy-holder in a fire insurance company dissolved on account of insolvency, are fixed at the date of dissolution.—Wood on Insurance, 2 ed., sec. 147; Wait on Insolvent Corp, sec. 389; *Commonwealth v. Ins. Co.,* 119 Mass. 51; *Millers Appeal,* 35 Penn. 481; *Carr v. Hamilton,* 129 U. S. 252. And the kind of dissolution contemplated is not a judicial dissolution, but a dissolution in substance, that is, insolvency, ceasing to do business and the appointment of a receiver.—*Cen. Agr. & Mechan. Asso. v. Ala. Gold Life,* 70 Ala. 134; *McDonald v. Ala. Gold Life,* 85 Ala. 409; *Fogg v. Supreme Lodge &c.,* 33 N. E. Rep. 692.

2. When the policy requires proof of loss shall be made within a specified time, or facts shown that establish a waiver of strict compliance, no recovery can be had, although the policy contains no express provision for forfeiture in case of failure.—*Cen. City Ins. Co. v. Oates,* 86 Ala. 567; *Quinlan v. Ins. Co.,* 133 N. Y. 356; *Blossom v. Ins. Co.,* 64 N. Y. 162; *Scammon v. Ins. Co.,* 101 Ill. 621; *Smith v. Ins. Co.,* 1 Allen 297.

3.   It is only when proofs of loss and notice of loss are produced within the specified time but are defective, that a failure to object is treated as a waiver.   A failure o object because they are *too late* is not a waiver.—*Ins. Co. v. Kyle,* 11 Mo. 278; *Patrick v. Ins. Co.,* 43 N. H. 621; *Edwards v. Ins. Co.,* 3 Gill 370; *Ins. Co. v. Gould,* 80 Ill. 388.

5.   The ownership of the property or an insurance interest thereon, both at time of insurance and at time of loss must be shown by plaintiff to enable him to recover. *Com. Ins. Co. v. Capital City Ins. Co.,* 81 Ala. 321; *Ala. Gold Life v. Mobile &c. Ins. Co.,* 81 Ala. 333.

PER CURIAM.—This was a general creditors' bill, to marshal and apply to the payment of debts, the assets of the Royal Insurance Company, of Birmingham, an insolvent fire insurance company.   The bill was filed on the 17th April, 1888, and on August 17th, 1893, a final decree was rendered adjudging that the company was insolvent on the 11th April, 1888, and had so continued; that complainants were creditors; and that the stockholders were liable to the creditors, in specific amounts, aggregating $89,550, upon their unpaid subscription for stock; and the register was required to give notice to the creditors to present their claims for allowance, on or before 30th September, 1893, and to report on the several claims presented.   The register held the reference; and various claims were presented, and on the coming in of his report, the chancellor decreed thereon.   Various claimants coming in under the final decree, have appealed from the decree of the chancellor, upon the report of the register.

It is convenient first to state some general principles, applicable to a number of the claims against the company upon which the decree was rendered.   In the event a private business corporation, becomes insolvent, ceases to do business, and fails or refuses payment of its debts, a court of equity is the only forum capable of reaching its assets, and of distributing them equally to its creditors.   The duty of discharging the obligations of the corporation, through the administration of its assets, and the necessity of doing this upon principles of equality

and fairness, according to the jurisprudence of the court, authorize and require the marshalling of both debts and assets. The debts must be determined to discover to whom *pro rata* payment is to be made, as the assets must be realized, and reduced to money, to provide the means of payment. This requires the court to fix a day to which all the engagements of the company may be referred, so as to determine the status of the debts, as to amounts, including principal and interest, otherwise there could be no equality of distribution. There is nothing in the nature of the proceedings, or in the rights of parties, under contract or otherwise, which fixes this date with precision. It is purely a question of convenience of administration, and may be one day or another as the circumstances of the case, and the equities of the parties may affect the conscience of the court. The most appropriate and usual date fixed, is the day of the administration decree. It is for like convenience, usual for the court to fix a time within which claims must be presented and proved, but while the administration will not be delayed, it is the constant habit to allow claims to come in, as long as the court has the funds under control. There is no inherent right in the court in any case of administration, unaffected by statutes, to terminate contract relations. These when made, whether by corporations or natural persons, run their course, and the rights of parties are solvable only by the terms of the contracts themselves. But there is in all contracts of insurance, an implied, if there be no express, engagement on the part of the company insuring, to keep its affairs in condition to meet its futre risks, for which premiums have been paid or promised. And so, when it falls out that the company is unable longer to keep its promises, and its assets are taken possession of by the court, for pro rata application to its debts, the court has the right to fix a day up to which engagements under contract may be regarded as continuing, but after which the creditors may regard them as terminated on account of the altered condition of the company, disabling it further to meet its reciprocal promises. This is an option afforded to creditors by the court, in view of the contract relations of the parties, and is strictly in the nature of a res-

cission by them, and the proof by them in such cases, is in the way of damages, and is measurable by the present value of their contracts.

We may properly impersonalize the capital stock and assets of a corporation as making its contracts, and the corporation itself and its officers as its agents merely, for the responsibility extends only to the assets, but it extends to every dollar of them without exemption, until the last debt is paid. On an administration of these assets then, for the payment of the debts of the corporation, it must be evident, on the principles we have announced, that the corporation must face the dilemma of, either admitting a continuing creditor to prove for the value of his contract, as upon rescission, on account of the failure of the company to keep its part of the engagement, or of insisting and standing upon the terms of the contract, and asserting its ability and willingness to perform. There is no other resource open to the company, or the capital stock represented by it. If the debt or contract is admitted or proved, payment follows, as a matter of course, through one channel or the other. But the finding of insolvency, and the assumption of possession of the assets by the court, for application to debts, is an adjudication against the latter alternative, of any right to regard contracts as still continuing, and leaves open to creditors the unqualified right (option), to the other, of proving for the present value of their contracts as of the day fixed by the court for the mere convenience of administration. It is equally plain, that, while the court, fixing a day to which all debts might or must be referred, in order to give them a uniform status, might harshly conclude its distribution to creditors coming strictly within its orders, without reference to the rights of other creditors not precisely within their pale; the practice is otherwise.—*Williams v. Gibbs,* 17 How. 239; *Myers v. Fenn,* 5 Wall. 205; *Johnson v. Waters,* 111 U. S. 640; *Richmond v. Irons,* 121 U. S. 27. But in any event, it would be wholly without authority to exempt a dollar of assets to the corporation, or its stockholders, from the payment of debts existing in fact and duly established. The following authorities clearly establish the foregoing principles:—Waite on Insolvent Corp, § § 382-3, 389;

*People v. National Trust Co.*, 82 N. Y. 283; *People v. Security Life & Ins. Co.*, 78 N. Y. 114; *Richmond v. Irons, supra; Sterndale v. Hankinson*, 1 Simon 393; *Whitney v. Hanover Nat. Bank*, 71 Miss. 1009; *Ala. Nat. Bank v. Mary Lee C. & R. Co.*, 108 Ala. 288; 4 Thompson on Corp., § 4538; *Trustees v. Beers*, 2 Black 448; *Tunesma v. Schuttler*, 114 Ill. 166.

There can be but one administration of a trust fund. The very conception of it implies singleness. All entitled to participate are supposed to have full opportunity to claim their full share, and when the claims are paid, the whole surplus, if any, passes to those entitled to receive it. While two or more of such suits may be begun, the rendition of an administration decree, adjourns all suits or claims into that suit, and in the forum making the decree.—2 Dan. Chan. Prac. 1614-1617. The court will not thereafter permit a creditor to proceed on his own account, against the assets, of which it has assumed control, since such a right would make it impossible for the court to proceed effectively. But the court, in cutting off this right to a particular remedy, makes its administration decree a judgment in favor of all creditors, who come in under its provisions and claim its benefits; it being an universal rule that a court of equity, when any restriction is imposed as a consequence of its orders, gives to the party restrained such rights as he would have had without the restriction.—1 Dan. Ch. Pr. 644, 635; 2 Ib. 1211, 1614; Story's Eq. Pl. § 108; Freeman on Judgments, § 157; *Richmond v. Irons, supra; Tunesma v. Schuttler*, 114 Ill. 156, 167; *Ex parte Printus*, 87 Ala. 148; *Louisville M. Co. v. Brown*, 101 Ala. 273.

It follows that the filing of a creditors' bill, and a decree thereon, stops the running of the statute of limitations against creditors, who come in under its provisions. Ang. on Lim, § § 313-331; Bushnell on Lim. § 366; *Pennel v. Ins. Co.*, 73 Ill. 306; *Richmond v. Irons*, 121 U. S. 27.

We pass to a consideration of the errors assigned, in the order of their assignment. We dismiss the consideration of the previous suit commenced by the absconding officers of the company, in which a receiver was im-

providently appointed by the court, as having no bearing whatever in this case. It was collusive and fraudulent, and never amounted to a *lis pendens* in behalf of creditors, nor was there any administration decree rendered therein. It was abandoned; and though a receiver was nominally appointed, his position could amount to nothing more than a custodian introduced by the corporation itself, and the receivership was properly extended or adjourned to this cause.—High on Receivers, § § 437, 833; 20 Ency. Law, (1st ed.) 14.

Foot, Schulze & Co. held a policy of the Royal Insurance Co. under which a loss was sustained on the 16th February, 1888, prior to filing of the creditors' bill in this case. Their right to stand as creditors, therefore, is indisputable, if their claim was properly made out in other respects. They filed a petition in the court on the 20th June, 1888, electing to come in under the decree that might be made in this cause. This was enough to give them a full standing as creditors entitled o prove under the decree when made.—5 Ency. Pl. & Pr. 553. On the 29th August, 1893, they followed up this petition by filing proof of their claim before the register. Objections were urged to the claim, but it was allowed and so reported to the court, but the chancellor disallowed it. The question as to this claim relates to the correctness of the chancellor's ruling.

Three questions are raised to this claim. First, whether the policy was in force on the date of the fire on the 13th February, 1888. We see no room to doubt that it was in full force. There had been no administration suit, and an election to claim under it, up to that date, nor is this proceeding under any administration decree as of a date previous to February 13, 1888, so that claiming under it, would be an election to terminate the contract and take its value as of the date of the decree. The second question is, whether the appellants lost their rights under the policy from not giving "immediate notice" of the loss, or because proof of loss was not rendered to the insurance company within 30 days thereafter. The notice was given on the 16th, two days at most after the loss, and perhaps only one, for the notice ap-

peared to be stamped by the postmaster as of the 16th, and this might well have been on the letter deposited on the 15th, one day after the fire. This we may with perfect propriety say was "immediate" in the sense and purpose of the contract.—Sansum Dig. of Law of Insur. 834; Berryman Dig. of Law of Insur. 907. The omission to give such notice was not by the policy an express term of forfeiture, and without that, the law would be slow to apply any strictness of construction to work a forfeiture in the absence of any allegation or possibility of damage. We hold that the notice was sufficient in terms and time.—*Niagara Fire Insurance Co. v. Scammon,* 100 Ill. 644; *Knickerbocker Ins. Co. v. McGinnis,* 87 Ill. 70.

In reference to the proof of loss, the policy provided that the assured shall within thirty days after the notice of the fire, "render to the company a particular account of such loss * * * and until 60 days after the proof * * * the loss shall not be payable." In this case the proof was mailed and properly directed on the 9th April, after notice of loss on 16th February, and thus was not within the prescribed thirty days. This, like the requirement of the notice of loss, was not a term of forfeiture, by the words of the policy, though there were express terms of forfeiture. It was left out of that class, we must suppose, as not belonging to it. In its nature, it was of less importance than the notice of loss, and the whole benefit of the provision was secured to the company, by the clause providing, that the loss should not be payable until sixty days after the proof of loss was made. Delay in making the proof, was therefore a matter which operated entirely against the insured. Provisions of this kind, to be effective as forfeitures, must be expressed as such in unmistakable terms in the contract itself.—Pom. on Contracts, § 392; *Tubbs v. Ins. Co.,* 84 Mich. 646; *Coventry Mut. L. A. v. Evans,* 102 Penn. 281; *Weiss v. Am. Fire Ins. Co.,* 148 Penn. 349.

But, independent of this, the notice of the loss, and proof of loss were never objected to, except by way of defense to the claim. This was a clear waiver.—*Home Ins. Co. v. Adler,* 71 Ala. 516; *Brink v. Ins. Co.,* 80 N. Y. 108; *Fire Ins. Co. v. Felrath,* 77 Ala. 194; *Commercial*

*Fire Ins. Co. v. Allen,* 80 Ala. 571; *Fireman's Ins. Co. v. Crandall,* 33 Ala. 9.

It is unnecessary to consider the point that the law would not require notice and proof of loss to be made when there was no person or company to receive notice. If there was any one authorized to receive notice, the reception of notice without objection would be a legal waiver of want of being in time, if that was material. Berryman Dig. of Law of Ins. 911; Sansum Dig. of Law of Ins. 838. It is thus evident that the claim of these appellants, was improperly rejected by the chancellor.

In reference to the claim of the South Bend Toy Manufacturing Company, the notice and proof of loss were within the letter of the policy; the first being given the next day, and the latter made within thirty days after the fire, so that there is no question as to that claim on these points. It is insisted, however, that the appointment of the receiver, in the case fraudulently commenced by the officers of the company, terminated the contract under the policy, so that the loss occurring afterwards but before the filing of the bill in this case, could not be proved. What we have said above, is a sufficient answer to this defense. Insurance companies cannot thus terminate their contracts; and the courts can only do it, by offering an election to the creditor to come in under the decree, and take the present value of his contract, or to remain out and get what he can, beyond the assets under the control of the court. This election is only presented here under the decree rendered in this case, and has no operation against the loss in this instance, which occurred on the 29th Dec. 1887.

The appellees contend, that the claimant is not shown to be the owner of the property, because there was a stipulation that the loss if any was payable to Samuel Goode as his interest may appear. There was no exception to the claim on this ground. If there had been it might have been met by proof directed to that end. The policy is in the name of the claimant, and the clause referred to is a mere appointment for the benefit of the mortgagee, not constituting an assignment.—*Firs Ins. Co. v. Felrath,* 77 Ala. 194. The proof shows the claim-

ant to be the owner of the policy, and sufficiently proves the loss. The chancellor, therefore, erred in sustaining the exceptions to the register's report on this claim.

Claim of M. E. Page & Co. The fire under this policy occurred on 15th September, 1887. The evidence is without contradiction that notice and proof of loss were made within a reasonable time, and that the loss was adjusted, fixing the liability under the policy in question at $1,000. What we have said above shows that this claim should have been allowed in full, and not in part as reported by the register.

Claim of Sampson & Co. In this case the fire occurred on 7th November, 1887. The loss was total and an adjustment was arrived at, making the amount due from the company, $613.34. The notice and proof of loss, besides, were properly made and given. The register should have allowed the claim.

Claim of W. G. Nixon. The loss in this claim occurred on 10th March, 1888. The claim was therefore properly provable in this suit, commenced in April thereafter. Proof and notice of loss were given properly, though the former was after thirty-two days from the fire, being on the 12th April. Time, as we have seen, is not of the essence of this clause of the policy. And, besides, no objection was made to the proof of loss. True the proof was made to the party exercising the *de facto* office of receiver. There was no one else to whom the proof could be made, and if he could not receive the proof, and waive objections, if of any substance, then no proof of loss was necessary, except in proving the claim before the register. There is no substantial objection to this claim and it should have been allowed in full, and in rejecting it the register and the court erred.

Claim of Coleman Bros. The loss in this instance was on the 20th September, 1887. The insurance is for $800, in two items, one of $600, the other of $200. The loss was total and the value of the property was $1,200 or $1,300. The register allowed the $200 item, but not the $600. We think the evidence fairly and fully shows the loss as to both items, and decide that they should have been allowed. If objection had been filed, on the ground

urged in argument, that the proof was not sufficient as to the value of the loss under each item, it might have been remedied, if defective. To urge such objections for the first time in argument is not permissible. The proof, however, we think, is entirely sufficient.

Claim of M. T. Horner & Co. There is not any substantial objection to this claim. The loss occurred on 7th June, 1887, and notice and proof of loss were duly given and held without objection, and there was, moreover, an adjustment of the loss by the company's agent. The claim should have been allowed by the register and the court.

Claim of T. A. Echle & Bro. The loss in this case occurred 15th February, 1887. The only substantial objection urged to this claim is that suit was not commenced within one year, according to the conventional limitation of the policy. In answer to this, it is sufficient to say, that by agreement of the parties it appears that all the officers of the company had absconded, and that, after the 3rd of December, 1887, there was no person on whom service could be had. The company cannot suffer its officers to go and remain in other States, beyond the jurisdiction of the courts of its domicil, and cancel its debts by limitations, while they are absent from the State. This is not a statute of limitations, but a contract which carries with it the implication that no difficulty will be interposed to the due prosecution of a suit. Such a stipulation may be waived or rendered nugatory by conduct or circumstances.—*Semmes v. Ins. Co.,* 13 Wall. 158; *Ames v. N. Y. Ins. Co.,* 14 N. Y. 253; 11 Ency. Law, (1st ed.) 349-351. We hold that it has no effect in this case.

The claim of H. M. Taber and H. L. Aldrich. The loss in this case occurred on the 14th October, 1887. The notice and proof of loss were made sufficiently. It appears that there was no certificate of a magistrate as required to the proof of loss, but there was no objection on that account, and it was therefore waived.—*Clarke v. New England M. F. I. Co.,* 6 Cush. 342; *O'Brien v. Phœnix Ins. Co.,* 76 N. Y. 459; *Hibernia M. F. Ins. Co. v. Myer,* 39 N. J. L. 482.

The objection that the proof shows that claimants were lessees, and not owners of the property, and does not show the value of their leasehold interest, we think is not well taken. The ground of objection is not pointed out by any exception to the claim before the register. This was a clear waiver, for if made it might have been fully answered by proof, so far as we know. However we do not think there is any defect in the proof on the point. There is no proof that claimants were lessees of the movable machinery etc. in the mills, though they were of the "Baltic Mill Estate." The evidence is entirely sufficient, in the absence of any specific objection, and all proof to the contrary, to show a total loss under this policy. The register disallowed the claim because the policy describes the property as in the "Baltic Mill" in the town of Sprague, Connecticut, and that though the proof was full and ample that the property was in "Baltic Mill," Connecticut, it did not show that it was in Baltic Mill in the town of Sprague, Connecticut. And so he held that claimants could not recover, because the property destroyed was not the property insured, and because there was a breach of warranty, in that it was represented that the property was in Baltic Mill in the town of Sprague. These objections were not taken to the claim, but raised in argument after the evidence was closed. If they had been taken, so as to give notice, there probably would have been proofs to satisfy the objections, if of any merit. It is too late to interpose for the first time such matters in argument. But the proof is ample, we think, on both heads. It is not probable, that there are two Baltic Mills in Connecticut, within three miles of each other, at any rate we will not so presume. And the evidence is full that the property was in the Baltic Mill in Connecticut, and is sufficient to raise the presumption that Baltic Mill, is in the town or township of Sprague. We conclude that the claim should have been allowed in full.

The decree is reversed and the cause remanded for further proceedings in conformity to this opinion.