LAUREL RACING CO., INC. *v.* JONES.

No. 39367 March 28, 1955 78 So. 2d 879

*Pershing B. Sullivan,* Laurel, for appellant.

*Dudley W. Conner,* Hattiesburg, for appellee.

ARRINGTON, J.

This suit was filed by the appellee, J. W. C. Jones, in the Chancery Court of the Second Judicial District of Jones County, averring that appellant, Laurel Racing Company, Inc., promoted and staged stock car races and offered prize money to the winning participants; that the appellee entered such races on July 5, 1952, and that his automobile, described as No. 666, won $180.00 in prize money, but was wrongfully disqualified by the

racing judges employed by appellant, and that the $180.00 was due appellee by appellant.

It is admitted that appellee's racing car, No. 666, won the racing contest on the night of July 5, 1952, and was entitled to the prize money in the sum of $180.00, if car No. 666 complied with the rules of the appellant as to the type of car that might participate in the races.

Numerous and detailed rules in regard to the definition of a "stock car" were adopted by the appellant. These rules limited the amount of mechanical improvements that might be made on an automobile as delivered from the manufacturer for the purpose of increasing its speed. Appellant contends that car No. 666 was constructed in violation of Rules 31 and 32. Rule 31 provides that "any motor, same make as car, regardless of model," could be used in the racing car. Rule 32 provides that "engines may be relieved but not ported, if stock."

 █ Appellant's objections to the construction of car No. 666 are limited to three particulars embraced in the two rules above: First, that the motor of car No. 666 was improper in that the block of the engine in the car was a Mercury block of the type manufactured from 1942 to 1948 inclusive; while the crankshaft was a Mercury product of the type used in the 1949 model engine, with a one-fourth inch longer stroke than the stroke originally found in the 1942 to 1948 Mercury engine. The engine thus created and used in car No. 666 was an engine made up entirely of Mercury parts manufactured by the Ford Motor Company, but of different years, and was known as a "hybrid" engine. No facts are in dispute in regard to this aspect of car No. 666's construction, but only an interpretation of Rule 31. This rule provides that any motor of the same make as the car may be used regardless of the year model. The appellee used in car No. 666 a Mercury motor, 1942 to 1948 vintage. All of the parts in the engine were of Mercury make, thus the engine was a Mercury engine

and conformed to the requirements of Rule 31, which did not prohibit the use of a "hybrid" engine.

Second, appellant contends that the engine of car No. 666 was "relieved" and "ported" in violation of Rule 32. The determination of these issues evolves jointly upon a definition of the two aforesaid terms, and the application of the facts as they existed in regard to the engine of car No. 666 on the night in question. The learned chancellor found that the engine of the said car was not "relieved" by the appellee, and was not "ported."

Appellee offered the testimony of three mechanics of many years' experience, who testified that they were thoroughly familiar with the engine of car No. 666, having examined said engine both prior to and after the races on the night in question. That while the engine had been "relieved," that is, the block had been cut down around the valves to let the gas flow into the cylinders prior to combustion and the exhaust gases flow out easier, the engine had been factory "relieved" and was thus in conformity with Rule 31. Their testimony was also that fifty percent of the engines manufactured by Mercury from 1942 to 1948 were "relieved" at the factory, whereas the other fifty percent were not "relieved."

Appellant offered the testimony of one expert mechanic in this regard, who testified that while the block of the engine of car No. 666 was factory "relieved," the factory "relief" job had been subsequently improved upon, thus presenting an issue of fact for the chancellor's decision.

Rule 32 clearly prohibits the "porting" of an engine. The witnesses of both appellee and appellant agree that the ports of the engine of car No. 666 had been cleaned and polished and some small amount of metal removed in the process. However, appellee's proof was that an engine was not "ported" unless a considerable amount of metal was removed from the walls of the ports, that

is, the intake and exhaust ports were enlarged to permit a freer flow of gas to and from the cylinders. In the opinion of one mechanic, one-sixteenth of an inch of metal would have to be removed from the walls of the ports before it could be said that the engine was "ported." Appellant offered the testimony of two experts on this issue who testified that the removal of any amount of metal, however small, from the ports would constitute "porting" the engine. No more authoritative evidence than the opinions of the various mechanics was offered. Thus it was clearly a question of fact for the chancellor to determine what constituted the "porting" of an engine.

 Appellant contends that the chancery court had no jurisdiction to try the cause below, and that it should have been tried in the ciruit court. Section 147, Mississippi Constitution of 1890, provides that "no judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render such judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction." Whitney v. Hanover Bank, 71 Miss. 1009, 15 So. 33; Wood, etc. v. Meyer, 76 Miss. 586, 25 So. 297; Goyer v. Wilberger, 71 Miss. 483, 15 So. 235; White, et al v. Willis, 111 Miss. 417, 71 So. 737.

 We find no merit in the other assignments of error. It has long been the rule in Mississippi that the chancellor's finding on the facts will not be disturbed on appeal unless manifestly wrong. Griffith, Mississippi Chancery Practice, 2d Ed. 1950, Sec. 674. The facts in this case were conflicting, and we are unable to say that the chancellor was in error in his decision.

Affirmed.

*Roberds, P. J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.