FITE, receiver, *v.* HENSON *et al.; et vice versa.*

1. The provisions of section 4 of article 10 of the act approved August 16, 1919 (Acts 1919, pp. 135-222), deny the right to individual persons to institute and prosecute actions in courts of equity for the appointment of receivers for State banks chartered under the laws of this State, and require all such suits to be brought by the superintendent of banks in the name of the State.

2-6. Section 4 of the act just cited does not violate the following provisions of the constitution; (a) Article 3, section 7, paragraph 8 (Civil Code, § 6437), which provides that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." (b) Article 1, section 3, paragraph 2 (Civil Code, § 6389), which provides that "No bill of attainder, ex post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grants of special privileges or immunities, shall be passed." (c) Article 1, section 1, paragraph 3 (Civil Code, § 6359), which provides that "No person shall be deprived of life, liberty, or property, except by due process of law." (d) Article 1, section 1, paragraph 23 (Civil Code, § 6379), which provides: "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." (e) Article 1, section 4, paragraph 1 (Civil Code, § 6391), which provides: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such consent."

7. Section 4 of the act mentioned in the preceding notes is applicable to a case in which a depositor in a State bank instituted an action in his individual name against the bank in 1920, after the act of 1919 became effective, for appointment of a receiver to collect from shareholders their statutory liability to depositors and administration of the funds so collected, the bank having become insolvent and ceased to do business, and its assets administered through the medium of its liquidating agent, and all debts paid except a certain class of depositors, prior to the date on which the act became effective.

8. A judgment appointing a receiver in an action instituted by an individual as indicated in the preceding note is void on its face, and, being so, is subject to collateral attack in a suit instituted by the receiver against shareholders of the bank upon their statutory liability to depositors.

9. The rulings announced in the preceding notes result in reversal of the judgment upon which error is assigned in the cross-bill of exceptions, and necessarily disposes of the whole case. In these circumstances the main bill of exceptions will be dismissed.

Nos. 3811, 3854.  FEBRUARY 27, 1924.

Equitable petition. Before Judge J. B. Jones. Union superior court. April 21, 1923.

In 1909 the Secretary of State issued his certificate, under the provisions of the Civil Code (1910), §§ 2262 et seq., for the incorporation of the Union County Bank. The minimum authorized capital stock was $25,000, divided into 250 shares of the par value of $100 each. One hundred and fifty shares aggregating $15,000, were subscribed and paid for in full. The remaining 100 shares were never subscribed. The subscribers for the 150 shares organized and commenced business in the name of the bank. In December, 1917, the bank was ascertained to be insolvent, caused by certain losses referred to as "Sparta matters." In anticipation of an assessment upon the shareholders, which was afterwards made by the board of directors and ratified by a majority vote of the shareholders, certain of the shareholders immediately paid into the bank $233.33 on each share of stock held by them. The anticipated assessment was made in January, 1918, by the passage of a resolution which declared: "Be it resolved, that in order to fully protect the depositors, to continue the Bank, and thereby protect ourselves as stockholders to a minimum loss, we hereby vote an assessment of $233.33 on each share of the capital stock of this Bank to be paid by March 1, 1918, said sums paid in or as much of said sums paid in to be reimbursed after the adjustment of the Sparta matters and the financial condition of the bank will warrant said reimbursements."

A letter was received from the State bank examiner, dated April 5, 1918, as follows: "We find upon examination that your capital stock is impaired $35,000.00, which is in excess of ten per cent.; and we hereby place your Bank on official notice, as required under section 2291 of the Civil Code, to have said impairment fully covered within ninety days from the date of this notice. It is your duty to make your board of directors acquainted with this notice; and it is their duty to immediately call a special meeting of the stockholders for the purpose of making assessments against the stock sufficient in amount to cover said impairment, payable in cash. For your convenience we quote below the section of the Code referred to herein, as follows: 'Civil Code (1910), § 2291. Whenever it shall appear that the capital stock of any bank or trust company doing business under this law has been impaired over ten per cent.,

the State bank examiner shall notify such bank to make such impairment good within ninety days; and it shall be the duty of the officers and directors of any bank receiving such notice from the State bank examiner to immediately call a special meeting of its stockholders for the purpose of making assessment on its stock, sufficient to cover the impairment of its capital, payable in cash: Provided, that such bank may reduce its capital to the extent of the impairment, if such reduction will not place its capital below the amount required by this law.' Your books show that fifteen thousand dollars or sixty per cent, of the authorized capital stock has actually been paid in; and it is therefore your duty to require the balance, $10,000.00 (40%), to be paid in at once, and then assess the fully paid up shares for 100%, which will cover the impairment named therein."

At a meeting of the board of directors, April 10, 1918, the letter was read and approved, and a called meeting of the shareholders was voted for, to convene on April 23, 1918, for the purpose of making assessment as directed by the letter. At the meeting of the shareholders the letter was read, and on motion duly seconded the shareholders voted and "confirmed their action in voting assessments of $233.33 against each share of the capital stock in meeting January 29, 1918." The amount of the assessment so made on each of the 150 shares of outstanding stock would aggregate $35,000. In a short time afterwards certain other shareholders paid the full amount of the assessments on the shares of stock held by them, the last payment being made on July 17, 1918. The number of shares upon which the assessments were paid aggregated 88, which will be called Class A. When the assessments were paid, written contracts were executed in duplicate between each shareholder and the bank, all being alike in all respects except as to names of the shareholders and amounts. A copy of one of them was as follows: "Whereas W. H. Henson is a stockholder in the Union County Bank of Blairsville, Union County, Georgia, having 4 shares of stock of said Bank of the face value of $100.00 each; and whereas said Union County Bank is capitalized at $25,000.00, and of said sum only $15,000.00 is now actually paid up, and represented by 150 shares of stock, issued by said Bank, which represents 60 per cent. of the said capital stock; and whereas it is recognized by the stockholders of said Bank that liability of each share of said Bank stock is

$233.33 in addition to that paid in as represented by stock now issued; and whereas said Union County Bank is at present embarrassed, on account of certain of its funds held by the Walker Financing & Security Company of Sparta, Ga., said sum being approximately $40,000.00, and the same being now in litigation; and whereas the stockholders, at a duly called meeting, held in the building of said Bank at Blairsville, Ga., on the 29th day of January, 1918, by proper resolution, did assess each and all of said stockholders their full stock liability on each share of said Bank stock, said sum per share being $233.33, and ordered that the said sum so assessed be paid into Union County Bank on or before the 1st day of March, 1918, for the purpose of relieving the embarrassment of said Bank and to enable it to continue its business and to prosecute its collection of outstanding indebtedness; and whereas W. H. Henson, in obedience to said assessment, has paid in his full assessment, the same being the sum of $933.32: Now it is agreed and so understood, in accordance with said assessment, that when the sum or sums due said Union County Bank are finally collected and the financial condition of said Bank is such as to warrant it, the said W. H. Henson will be reimbursed by said Bank whatever sum may be due him of the amount now paid in, less whatever may then be determined, on a fair and just settlement, is his legal stock liability. Said assessment sum now paid in is to draw no interest."

The number of shares upon which the assessments were not paid aggregated 62, which will be called Class B. On July 29, by order of the board of directors, ratified at a meeting of the shareholders, the bank was closed and was thereafter operated only for the purpose of liquidation by the cashier as "liquidating agent." After the date in December, 1917, on which the bank was ascertained to be insolvent, all of the assessments upon shares of stock were paid in by Class A shareholders, amounting to $20,519, and mingled with other funds of the bank derived from collection of debts and sale of the bank building and fixtures, and paid out to the general creditors and general depositors in the bank. Such payments accomplished full payment to all general creditors and all depositors, except $4272.26, which amount was due certain depositors on time certificates. On October 19, 1920, one of the depositors of the latter class, who was also a Class A shareholder, instituted an action against the bank, to have a receiver appointed for the purpose of collecting the

assessments from Class B shareholders, to be applied to payment of petitioner's demand and the unpaid depositors to whom there was a statutory liability by such shareholders. A receiver was appointed, who under a special order of court instituted an action against the Class B shareholders, to recover so much of the assessments as would be sufficient to pay their pro rata shares of the statutory liability to the unpaid depositors, and so much as would be necessary to pay Class A shareholders to equalize among all the shareholders the payment to depositors on their respective statutory liability to depositors. So much of the petition as sought contribution from defendants to Class A shareholders was stricken on demurrer, and there was no exception to that ruling. Other grounds of demurrer complained (a) of nonjoinder of all shareholders as defendants, and (b) that the petition showed on its face that the plaintiff did not have either a cause of action or right to sue. To meet the last ground of demurrer, the plaintiff amended his petition by alleging, among other things, that sec. 4 of art. 15 of the act approved August 16, 1919 (Acts 1919, pp. 135-222), was unconstitutional. The provision of the act was copied as follows: "No suit to forfeit the charter of any bank, or for the liquidation of any bank, or for the appointment of a receiver of any bank, shall be instituted by any person except by and through the Superintendent of Banks in the name of the State. Any person shall have the right to submit to the Superintendent of Banks any facts which under the law would authorize the forfeiture of the charter of a bank, or any facts which would authorize the liquidation of a bank, for the appointment of a receiver therefor; and on such submission being made, it shall be the duty of the Superintendent of Banks to investigate; and if on such investigation he ascertains that the facts are such as will justify action for forfeiture of the charter, or for the liquidation of the bank, or for the appointment of a receiver, it shall be the duty of the Superintendent to take appropriate action in the premises." Park's 1922 Code Supplement, § 2276 (d).

This provision of the act was alleged to violate the following provisions of the constitution: (a) Article 3, section 7, paragraph 8 (Civil Code of 1910, § 6437), which provides: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," because said act contains matter different from what is expressed in

the title of the act of 1919, the title being as follows: "An act to regulate banking in the Sate of Georgia; to create the Department of Banking in the State of Georgia; to provide for the incorporation of banks and the amendment, renewal, and surrender of charters; to provide penalties for the violation of law in reference to banking and the banking business; and for other purposes." (*b*) Article 1, section 3, paragraph 2 (Civil Code of 1910, § 6389), which provides: "No bill of attainder, ex-post facto law, retroactive law, or law impairing the obligation of contracts, or making irrevocable grants of special privileges or immunities, shall be passed," because said act as applied, or if applied to case at bar which arose before the act of 1919 was passed, is a retroactive law. (*c*) Article 1, section 1, paragraph 3 (Civil Code of 1910, § 6359), which provides: "No person shall be deprived of life, liberty, or property, except by due process of law," because said act when applied to the facts of the case at bar, which occurred before the passage of the act of 1919, would deprive the parties for whom the petitioner sues of their property and property rights without due process of law. (*d*) Article 1, section 1, paragraph 23 (Civil Code of 1910, § 6379), which provides: "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided," because said act "confers on the superintendent of banks legislative, judicial, and executive duties and powers to be exercised at [the] same time, contrary to said section of the constitution, in that . . said act leaves him to 'take appropriate action in the premises,' without specifying what action or procedure of law, or by whom such action shall be determined to be appropriate or even legal. (*e*) Article 1, section 4, paragraph 1 (Civil Code of 1910, § 6391), which provides: "Laws of a general nature shall have unifrom operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. No general law affecting private rights shall be varied in any particular case by special legislation, except with the free consent, in writing, of all persons to be affected thereby; and no person under legal disability to contract is capable of such consent," because said act "is a special law applying only to banks, and is contrary to the following general law covering the same subject-matter, found in 5475 of

Code, which is as follows: ' When any fund or property may be in litigation and the rights of either or both parties cannot otherwise be fully protected, or when there may be a fund or property having no one to manage it, a receiver of the same may be appointed (on a proper case made) by the judge of the superior court having jurisdiction thereof, either in term or vacation, and such receiver is an officer of said court.' And is also contrary to the general law found in section 5476 of Code, which is as follows: 'Courts of equity shall have authority to appoint receivers to take possession of and protect trust or joint property and funds, whenever the danger of destruction and loss shall require such interference.' And also is contrary to the general law found in section 5479 of the Code, which is as follows: 'A court of equity may appoint a receiver to take possession of and hold, subject to the direction of the court, any assets charged with the payment of debts, where there is manifest danger of loss or destruction or material injury to those interested. Under extraordinary circumstances a receiver may be appointed before and without notice to the trustee or other person having charge of the assets. The terms on which a receiver is appointed shall be in the discretion of the chancellor,' because .. said act of 1919, as to part quoted, provides a special law applying to banks only when and where there exists a general law in force as above set out at same time applying to banks and all other cases."

After the amendment to the petition the court overruled the grounds of demurrer stated above, and the defendant excepted pendente lite. The case was finally submitted to the judge for decision upon all questions of law and fact. The judge rendered a judgment which declared: "It appearing from the evidence that there were 150 shares of stock paid up, and that the State bank examiner, on April 5th, 1919, required an assessment to be made on the capital stock of said bank and that thereafter the holders of all [11?] shares of said stock paid their assessment in full: It is adjudged that the indebtedness to the depositors named in the petition should be paid by the holders of the remaining 139 shares equally and ratably. It is adjudged that the claimed assessments paid by various stockholders prior to said assessments by said State bank examiner were voluntary payments, and that those who paid the same are only general creditors of the bank. It is adjudged that the amount due the depositors named in the petition is $4272.26 principal, that the

amount of interest due them up to August 8th, 1918, the date of the closing of the bank, is $181.18, and that the amount of interest due them at the rate of seven per cent. from August 8th, 1918, to this date is $1406.35, making the full amount .of interest due them to this date $1587.53. It is further adjudged that the liability of the defendants is 1/139 of said principal and interest for each share of stock held by them. . . It is further adjudged that this judgment is against said several defendants severally, and that execution may issue against them severally for the several amounts adjudged against them, and that the principal sum adjudged against each of them shall bear interest from this date at seven per cent. per annum. . ." To this judgment the receiver excepted, assigning error on the general grounds that it was contrary to the evidence and to law and equity; and specifically: (*a*) because the court should not have held that the payments of assessments prior to April 5, 1918, were merely voluntary and did not operate to discharge the shareholders making such payments from their statutory liability to depositors, but should have found that such payments to the bank were in turn paid to the depositors, and that such payment to the depositors discharged the shareholders from all statutory liability to depositors; (*b*) because under the law the evidence required the court to find that each defendant should pay plaintiff one sixty-second part of the total amount due plaintiff's usees for each share of stock owned by the defendants.

In a cross-bill of exceptions the defendants assigned error on the exceptions pendente lite. Error was also assigned on the final judgment in so far as it was held that the holders of eleven shares of capital stock who paid their assessment after April 5, 1918, were exempt from the assessments to pay the depositors, because it imposed upon the holders of 139 shares the burden of paying the assessment instead of on the holders of the entire number of 150 shares, and thereby exceeded the percentage which the defendants should be required to pay to depositors.

*Pat Haralson, T. S. Candler, O. J. Lilly,* and *J. G. Collins,* for plaintiff.

*W. A. Charters* and *H. H. Perry,* for defendants.

ATKINSON, J. 1. The controlling question is as to the right of the plaintiff to bring the suit; for if the receiver did not have the right to bring the suit, the action brought by him could not be main-

tained. That question depends on the construction, validity, and applicability of section 4 of article xv of the act approved August 16, 1919 (Acts 1919, pp. 135-222), as follows: "No suit to forfeit the charter of any bank, or for the liquidation of any bank, or for the appointment of a receiver of any bank, shall be instituted by any person except by and through the superintendent of banks in the name of the State. Any person shall have the right to submit to the superintendent of banks any facts which under the law would authorize the forfeiture of the charter of a bank, or any facts which would authorize the liquidation of a bank, or the appointment of a receiver therefor; and on such submission being made, it shall be the duty of the superintendent of banks to investigate, and if on such investigation he ascertains that the facts are such as will justify action for forfeiture of the charter, or for the liquidation of the bank, or for the appointment of a receiver, it shall be the duty of the superintendent to take appropriate action in the premises." The above quoted matter is only a part of one act that purports to deal broadly with the whole system of State banking laws of this State, and must be construed in the light of other provisions of the statute. The caption is: "An act to regulate banking in the State of Georgia; to create the Department of Banking of the State of Georgia; to provide for the incorporation of banks, and the amendment, renewal, and surrender of charters; to provide penalties for the violations of laws with reference to banking and the banking business; and for other purposes." Without quoting the provisions of the body of the act at length, it is sufficient to point out some of the features. Article II creates the Department of Banking in this State (Park's 1922 Supplement, §§ 2263(a) et seq.), one feature of which is creation of the office of superintendent of banks. That officer is made head of the Department of Banks. Throughout the act his powers and duties appear. They are numerous and broad. Among them are authority to supervise all State banks, and, in circumstances as enumerated in Article VII (Park's 1922 Supp. §§ 2268(a) et seq.), to take possession of banks and administer their assets for the benefit of creditors and stockholders, and, as provided in section 20 of article VII (Park's 1922 Supp. § 2268 (t) ), to make assessments on shareholders for statutory liability to depositors elsewhere provided for (in section 1 of article xviii [Park's 1922 Supp. § 2279 (a)]), and issue executions for such assessments. The pow-

ers and duties of the superintendent of banks, with respect to administration of the affairs of insolvent banks and the collection from shareholders on their statutory liability to depositors, are not less broad than would ordinarily be granted to a receiver. When this is taken into consideration in connection with the language of section 4 of article xv (Park's 1922 Supp. § 2276 (d)) that provision of the statute must be construed as mandatory, and as outlawing suits for receivers of banks that are not brought by the superintendent of banks in the name of the State.

2. It is alleged that the same section 4 of the act is violative of article 3, section 7, paragraph 8 (Civil Code, § 6437), of the constitution, which provides that "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof," because that portion of the act contains matter that is different from what is expressed in the caption. The contention is that the restriction prohibiting persons from bringing suits in their individual names for receivers of banks is unauthorized by the language of the caption. The caption is heretofore quoted. Its language indicates that the body of the act will take a broad range. The objects are mentioned in general terms that are followed by the words, "and for other purposes." One of the objects expressed is "to regulate banking in the State of Georgia." This is broad enough to include provisions safeguarding the business of banking in this State. The power to sue for appointment of receivers has reasonable relation to the business of banking, and its regulation as provided in the body of the act is authorized by the language of the caption. *Morris* v. *State,* 117 *Ga.* 1 (43 S. E. 368) ; *Stanley* v. *State,* 135 *Ga.* 859 (70 S. E. 591) ; *McFarlin* v. *Board of Drainage Commissioners,* 153 *Ga.* 766 (113 S. E. 447).

3. Another attack on the same provision of the act is that it violates article 1, section 3, paragraph 2 (Civil Code, § 6389), of the constitution, already quoted, because, if applied to the case under consideration, it would be retroactive, the cause having originated prior to the passage of the act. There is no merit in this ground of attack. The statute is remedial, and its application in this case relates to appointment of a receiver after the act became operative.

4. Another ground of attack on the same provision of the act is that it violates article 1, section 1, paragraph 3 (Civil Code, §

6359), of the constitution, before quoted, because when applied to the case under consideration the act would deprive the parties for whom the receiver brings suit of their property and their property rights without due process of law. This ground of attack is without merit. The right of the parties at interest to have a receiver is not lost. The statute is only a reasonable regulation on that subject. They may submit facts to the superintendent of banks that would authorize appointment of a receiver, and it would be his duty to apply in the name of the State for receiver, and for his refusal mandamus would lie.

5. Another ground of attack is that the statute violates article 1, section 1, paragraph 23 (Civil Code, § 6379), of the constitution before quoted, because the statute "confers on the superintendent of banks legislative, judicial, and executive duties and powers to be exercised at the same time, the act leaving him to 'take appropriate action in the premises,' without specifying what action or procedure or law or by whom such action shall be determined to be appropriate or even legal." There is not merit in this ground of attack. What would be "appropriate action" in a given case would depend on the facts presented, and not on the decision of the superintendent of banks.

6. Another ground of attack on the same statute is that it violates article 1, section 4, paragraph 1 (Civil Code, § 6391), of the constitution (before quoted), because the act is a special law applying only to banks for which there are existing general laws on the same subject, viz.: Civil Code, §§ 5475, 5476, and 5479, hereinbefore quoted. This act is not subject to the ground of attack. The act is not a special law. It operates uniformly throughout the limits of the State, and applies in all cases of applications for receivers for State banks. It is a general law.

7. The statute is applicable to the case under consideration. While the bank became insolvent and ceased to do business, and the assessments to pay depositors were made and actually paid by Class A shareholders, and the liability of Class B shareholders to depositors had occurred all before passage of the act of 1919, the bank had not ceased to exist, but remained subject to the regulatory provisions of the statute. If a receiver should be necessary to collect the amount due to depositors by the shareholders, the appointment

44

should be upon a suit instituted by the superintendent of banks in the name of the State, as provided in the statute.

8. The petition filed by the receiver showed upon its face that his only authority to sue was an appointment as receiver made in a case instituted by a depositor creditor of the bank in his individual name, in violation of the statute. In these circumstances the action for receiver was void as prohibited by the statute, and consequently the judgment appointing a receiver was void upon its face and subject to collateral attack. 23 Am. & Eng. Enc. Law, 1126, § xxiii: 23 R. C. L. 44, note 20: High on Receivers, 203. Tenth Nat. Bank v. Smith Const. Co., 227 Pa. 354 (76 Atl. 67, 136 Am. St. R. 884); Whitney v. Bank, 71 Miss. 1009 (15 So. 33, 23 L. R. A. 531). As the petition filed by the receiver against the delinquent Class B shareholders showed on its face the void order of the plaintiff's appointment as receiver, the petition was subject to the demurrer urged against it on the ground that the plaintiff had no right to sue.

9. The ruling announced in the preceding division of necessity disposes of the whole case, and renders it unnecessary to deal with other assignments of error. As the whole case is disposed of by rulings based on assignments of error in the cross-bill of exceptions, the main bill of exceptions will be dismissed. *Moore* v. *Kiser,* 144 *Ga.* 460 (87 S. E. 403); *DeLoach* v. *Ga. Coast &c. R. Co.,* 144 *Ga.* 678 (87 S. E. 889).

*Judgment reversed on the cross-bill of exceptions. Main bill of exceptions dismissed. All the Justices concur.*