RAYLE *v.* BENNETT, superintendent of banks.

No. 8320.  DECEMBER 22, 1931.

*Green & Michael,* for plaintiff in error.

*C. N. Davie, J. F. Kemp, E. W. Roberts,* and *Lawrence S. Camp,* contra.

RUSSELL, C. J.  The first question asked by the Court of Appeals is whether the superintendent of banks is authorized to take over for liquidation and administer the assets of a chartered bank which has become dissolved by the expiration of its charter, and where the charter of this bank is never afterwards revived.  Also whether the case of *Garrison* v. *Marietta Trust Co.,* 155 *Ga.* 562 (118 S. E. 48), is authority for an answer to this question in the

affirmative. The learned counsel for plaintiff in error take the position that when the charter expires there is no longer a legal entity. To quote from their brief, it is insisted, that, "Under the authorities quoted, and we have found no exception, a corporation whose charter has expired is legally dead, and so far as the superintendent of banks is concerned he is without authority to liquidate and manage the affairs of the corporation under the banking act. After the charter expired, the Bank of Lexington could not have filed a suit to collect a demand, and neither could the superintendent of banks have done it under the banking laws. The superintendent of banks acts under the statute authorizing his appointment, and gets his authority to administer banks under special statutes. Under the law his authority to administer a bank whose charter has expired is under a statute which provides for a reviver of the charter; and if the charter has not been revived before he takes charge, and if he does not have it revived after he has taken charge, he has no jurisdiction over the bank. He can no more levy an assessment than can the bank institute a suit." It is urged in the argument that the proper procedure, in a case where a banking corporation has been dissolved by the expiration of its charter and there has been no reviver or attempt to revive the charter as provided by law, would be the filing of an equitable petition and the appointment of a receiver to take charge of the assets of the banking corporation, instead of the levy of an assessment, the issuance of a fi. fa. to collect the liability of a stockholder, with a subsequent filing of an affidavit of illegality by the stockholder. In the brief for plaintiff in error it is said: "Code § 2245 provides that upon the dissolution of a corporation for any cause, all of its property and assets shall constitute a trust fund, and provides a method of distribution, and upon the dissolution of a corporation for any cause the superior court of the county where the corporation was located shall have power to appoint a receiver."

In answer to any question propounded by the Court of Appeals we can not rule upon any principle which is not clearly within the purview of the question asked by the Court of Appeals. This court can not imply a meaning not authorized by the language of the question, and can not go outside of the exact question asked. Nor will this court examine the record for the purpose of illumining any ambiguity in the question if such should appear. *Georgian*

*Co.* v. *Jones,* 154 *Ga.* 762 (115 S. E. 490) ; *Central of Ga. Ry. Co.* v. *Evans,* 172 *Ga.* 53 (157 S. E. 313). After a careful consideration of the authorities cited by counsel for both parties in this instance, we are of the opinion that the first division of the first question should be answered in the affirmative. The inquiry as to the case of *Garrison* v. *Marietta Trust Co.,* supra, will be treated at a later stage of our consideration of the case. There is some discussion as to the difference between charters forfeited and charters expired.. However, we do not consider this as being material to an answer to the question propounded, because the words used in the question are, "has become.dissolved by the expiration of its charter," and our answer must necessarily be confined to those words. Nevertheless it must be borne in mind that a corporation may be dissolved as well by forfeiture as by the expiration of its charter.

The real question in this case is whether, by the dissolution of a corporation, the stockholders are absolved from the liability to be assessed for the benefit of depositors of a bank which has failed and closed its doors. Perhaps section 1 of 'article VII of the act creating the department of banking (Ga. L. 1919, pp. 135, 154), itself alone answers this question. We quote from the section above mentioned (so far as material to the question) : "Whenever it shall appear to the superintendent of banks that any bank has violated its charter or any law of this State, or any law or regulation of the department of banking, or is conducting business in an unsafe or unauthorized manner; . . or when from any examination made by the superintendent, or any examiner, the superintendent shall have reason to conclude that any bank is in an unsafe or unsound condition to transact the business for which it was organized, or that it is unsafe for it to continue business, . . the superintendent himself, or by a duly authorized agent, shall forthwith take possession of all the assets and business of such bank and retain possession until such bank shall be authorized to resume business, *or its affairs be liquidated as herein provided."* (Italics ours.) Section 2 of article VII provides for a voluntary surrender of a bank to the superintendent, by posting a notice. It does not appear from the certified question whether the surrender in this case was voluntary; but if we assume that such was the case, then, under section 3 of article VII of the banking act, the effect of the posting of the prescribed notice by the directors, or the taking possession of

any bank by the superintendent of banks, is sufficient to place all assets and property of the bank in possession of the superintendent of banks and "bar any other legal proceeding against such bank or its assets." Article VII of the banking act would seem to exclude the right to apply for a receiver, urged by counsel for the plaintiff in error. In *Fite* v. *Henson*, 157 *Ga.* 679, 688 (122 S. E. 412), by mistake the provisions of section 4 of article X of the banking act of 1919 were referred to, when the court meant to refer to section 4 of article XV; but upon this point Mr. Justice Atkinson, delivering the opinion of the court, after stating some of the powers and duties of the superintendent of banks, ruled that "They are numerous and broad. . . When this is taken into consideration in connection with the language of section 4 of article XV (Park's 1922 Supp. § 2276(d)), that provision of the statute must be construed as mandatory, and as outlawing suits for receivers of banks that are not brought by the superintendent of banks in the name of the State."

The plaintiff in error contends, that, a bank having become defunct or extinct by the expiration of its charter, the superintendent of banks is not authorized to proceed as if its charter had not expired, and that the remedy of the depositors is the filing of an equitable petition and the appointment of a receiver, who should proceed under the orders of the court to administer the affairs and distribute according to law all assets of the defunct corporation. Cases are cited in which it has been held that the effect of the dissolution of the charter "was to extinguish the debts, unless there were some special statute to prevent this effect." To support the proposition that when the charter expired there was no longer any legal entity, the cases of Bank of United States v. McLoughlin, 2 Fed. Cas. 722, and First National Bank of Selma v. Colby, 21 Wall. (88 U. S.) 609 (22 L. ed. 687), are cited. The case of *Robison* v. *Beall*, 26 *Ga.* 17, is also cited, in which it was held that when the charter expired, the bank as a corporation was dissolved. It was held that the liability of the stockholders of the Planters & Mechanics Bank of Columbus expired with the expiration of the charter of the bank. From an examination of that case it appears that each of the three Judges of this court at that time wrote opinions sufficiently elaborate to occupy the first 107 pages of volume 26; but while two of the Judges concurred in the judgment,

Judge Lumpkin dissented, and vigorously reaffirmed what he had written for a majority of the court in *Moultrie* v. *Smiley,* 16 *Ga.* 289, where it was held that an action brought against the directors of a bank did not abate by the expiration of the charter by its own limitation during the pendency and before the termination of the suit. In *Robinson* v. *Lane,* 19 *Ga.* 337, in which the charter of the bank had been forfeited, and in which it was held that at common law all the debts due to and from the institution were extinguished, Judge Lumpkin, speaking for the majority of the court, said: "I have endeavored, and I trust successfully, to demonstrate on a former occasion, that, conceding this to be true, it does not affect or impair, in the slightest manner, the collateral undertaking of the stockholders under the 11th section of the charter. . . I am content to submit that opinion, and upon it my judicial reputation, to the test of time and the scrutiny of the professional world, and to be judged accordingly." A review of all the decisions upon our banking law in this period of the history of this court shows a continued variance in the views of the members thereof. As a matter of historical interest, Judge Lumpkin, in the *Robinson* case, started by saying: "I propose to write a brief opinion in this case, not because the points adjudicated are unimportant, but for the simple reason that a decision in these bank cases settles nothing. I am warranted in saying this from the experience of the past six years. With every change in the court, the same questions are reproduced for readjudication. And we are authorized to infer that this practice, so subversive of the fundamental object for which this tribunal was organized, is to continue so long as this litigation shall last. Why should I or any other Judge, under these circumstances, spend his time and strength for naught?" And accordingly he limited the expression of his views to 12 pages. Judge McDonald concurred in 12 pages, and Judge Benning, in dissenting, used 33 pages of volume 19.

In our opinion the language of the law as now written in the Code, and especially the provisions of the banking act of 1919 (Ga. L. 1919, p. 135), should determine the answer to the question propounded by the Court of Appeals. The word used in the question of the Court of Appeals is "dissolved," and the Civil Code of 1910, § 2246, declares that "The dissolution of a corporation, from any cause, shall not in any manner affect any collateral or ultimate

or other liability legally incurred by any of its officers or members." This section was taken from the act of 1858 (Ga. L. 1858, p. 21), and this act was probably passed to settle the divergencies in opinion referred to by Judge Lumpkin in *Robinson* v. *Lane,* supra; for the original act declared "that the liability of stockholders in banking and other chartered institutions shall not cease upon the expiration of the charter of said company, but that the same liability shall exist after as well as before the expiration of said charter, until the whole business of said company is fully settled up." In *Wheatley* v. *Glover,* 125 *Ga.* 710, 726 (54 S. E. 626), Mr. Justice Cobb, delivering the opinion of the court, said: "It has been contended that at common law the dissolution of a charter extinguished all debts due to or from a corporation. A statement to this effect has been made by some of the most learned writers on the common law. These statements, however, have been challenged with the assertion that the authorities relied on to support them do not lay down such a broad rule. Any one interested in the question may find much of interest in what has been said in some of the decisions of this court. See *Thornton* v. *Lane,* 11 *Ga.* 459; *Robinson* v. *Lane,* 19 *Ga.* 338 (8), and cit.; *Hargroves* v. *Chambers,* 30 *Ga.* 581 (8), 603, and cit. But this is not a practical question at this time. In 1858 the General Assembly declared that the dissolution of a corporation from any cause shall not in any manner affect any collateral or ultimate or other liability incurred by any of its officers or members." In 1918 the General Assembly passed an act (Ga. L. 1918, p. 136) declaring that "the dissolution of a corporation, either as a result of the expiration of its charter or for any other reason, shall not bring about its total extinction nor operate to extinguish any demand or cause of action against it in favor of any person whomsoever, whether arising from contract or tort, nor shall such dissolution work an abatement of any suit pending against it at the time of said dissolution; but all such pending suits may be prosecuted and enforced to a conclusion, as though such corporation was still undissolved." Further, "that suits for the enforcement of any demand or cause of action due by said corporation may to a like extent be instituted and enforced against it in any court having jurisdiction thereof at the time of its dissolution, and service thereon may be perfected either by seizure of the property of such corporation, by any form of legal process, or

by serving with process issued upon said suits any person who, as an agent or officer of such corporation, was subject to be served as its officer or agent at the time of such dissolution." In 1919 the General Assembly passed the general banking act, which in effect obviated any necessity for the appointment of a receiver, because we have uniformly and several times held that under the act of 1919 the superintendent of banks was in effect a statutory receiver and clothed with all the powers of a receiver.

The General Assembly, in the passage of the banking act of 1919, had in mind the provisions of § 2270 of the Civil Code of 1910, and practically incorporated it in art. XVIII, sec. 1 (Ga. L. 1919, p. 189). § 2270 was codified from the act of 1893 (Ga. L. 1893, p. 70), as follows: "Said corporation shall be responsible to its creditors to the extent of its capital stock and assets, and each stockholder shall be individually liable for all the debts of said corporation to the extent of his or her unpaid shares of stock, and said stockholders shall be further and additionally individually liable, equally and ratably (and not one for another as sureties), to depositors of said corporation for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock, it being the true intent and purpose of this section of this act, that, as to depositors for all moneys deposited with said corporation, there shall be an individual liability upon such stockholders in such corporation, over and beyond the par value of his or her original shares of stock, equal in amount to the face value of said shares of stock." The additional liability imposed on stockholders of banks for the protection of depositors under § 2270 of the Code of 1910 (which section was repealed by the act of 1919, supra), was provided for in art. XVIII, sec. 1, of the act of 1919; and authority was given the superintendent of banks for levying assessments and issuing fi. fas. against the stockholders to collect the same, in art VII, sec. 20. This act was amended in 1925 (Ga. L. 1925, p. 130). It would seem from the language of art. XVIII, sec. 1, of the banking act (Ga. L. 1919, p. 189) that the assessments are especially designed for the protection of depositors, there being only implied in the stockholder's contract of subscription that he is individually liable for the payment of all debts of the bank "to the extent of the balance remaining unpaid on his or her shares of stock," but as to depositors "said stockholders shall be further and additionally in-

dividually liable . . to depositors of such bank for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock," etc. So, in the essence, the liability assumed by a stockholder of a bank at this point is not to the bank itself, but to the depositors who have entrusted their money to the corporation of which the stockholder is a member. Many of the cases cited by learned counsel for plaintiff in error do not seem to be applicable to the question propounded by the Court of Appeals. From the nature of the question it is evident that the Court of Appeals has settled to its satisfaction the facts of the case, and asks the instruction of this court only as to the law applicable to those facts. Really the question here presented is not whether the bank can sue, or whether the bank is being sued. From the form of the question it must be inferred that the case as to which the Court of Appeals desires instruction is a suit by creditors (depositors) acting through the statutory receiver (the superintendent of banks) against a shareholder. Under the authorities cited, the liabilities of the shareholders are created by law and fixed by law. Furthermore, they are contractual in nature. Corporations created for the purpose of banking, just as all other private corporations, are based upon mutual agreements which constitute a contract, and there is written into the charter of every corporation authorized to do banking in this State the statutes enacted for the regulation of banking and the protection of the public. In accepting its charter all original shareholders and their successors agree to act in conformity to law and to obey the banking laws of the State which creates it.

In view of what we have said in answer to the first question, we deem it unnecessary at this time to make an analysis of the decision in *Garrison* v. *Marietta Trust Co.*, 155 *Ga.* 562 (supra), and institute a comparison of the opinion with the headnote, and go to the pains of examining the original record in that case, in order to determine whether this particular case is, in the strictest sense of the term, "authority" for an affirmative answer to the question propounded. It is a well-settled doctrine that the headnotes are to be read in the light of what is said upon the subject in the opinion. The syllabus is authority, the expression of the court's conclusion as a whole body reduced to writing. Civl Code (1910), § 6202. The headnotes may properly be construed by what is

more fully stated and set forth in the opinion, and are generally binding upon the court. Whether the headnote in the *Garrison* case is at variance with what is expressed in the opinion presents a superfluous question, in view of our extended discussion of the matter of abstract law involved in the first question.

*All the Justices concur.*

HINES, J. Under the banking act of 1919 (Ga. L. 1919, p. 135 et seq.), the superintendent of banks is authorized to take possession of and administer any bank which is being operated in an unlawful manner. Carrying on the business of a bank after the expiration of its charter is unlawful, and in such a case the superintendent of banks is authorized to take possession thereof and administer its affairs. See *File* v. *Henson,* 157 *Ga.* 679 (supra).